UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

SALLY LYDDY, ET AL.          :
                             :
     v.                      :      CIVIL NO. 3:06CV1420(AHN)
                             :
BRIDGEPORT BOARD OF EDUCATION,:
ET AL.                       :

RULING ON PENDING MOTIONS

The plaintiffs, Sally Lyddy ("Lyddy") and Maria Marcoccia ("Marcoccia"), bring this Title VII employment action against the City of Bridgeport ("City"), the Bridgeport Board of Education ("Board"), and Andrew Cimmino ("Cimmino"), the principal of Thomas Hooker School ("School"). Lyddy, a former teacher at the School, and Marcoccia, the School's former sexual harassment officer, both still work in the Bridgeport school system. They allege that when they worked at the School, they suffered sexual harassment and discrimination as a result of Cimmino's "sexual antics," which they say the Board condoned, permitted and refused to stop. In addition to their Title VII claims against all defendants, Lyddy and Marcoccia also allege a "negligent and/or intentional" infliction of emotional distress against Cimmino, and an "attempted due process" claim against the City.

The City, the Board and Cimmino have moved to dismiss the complaint [docs. ## 26 & 28] and to strike numerous allegations [docs. ## 26 & 30]. Lyddy and Marcoccia have moved to disqualify counsel for the City [docs. ## 52 & 53]. For the following

reasons, the motions to dismiss and strike are GRANTED in part
and DENIED in part.  The motions to disqualify counsel are
DENIED.

STANDARD

The function of a Rule 12(b)(6) motion to dismiss is "merely
to assess the legal feasibility of the complaint, not to assay
the weight of the evidence which might be offered in support
thereof."  <u>Ryder Energy Distribution v. Merrill Lynch
Commodities, Inc.</u>, 748 F.2d 774, 779 (2d Cir. 1984).  When
considering a motion to dismiss, the court must accept the facts
alleged in the complaint as true, draw all reasonable inferences
from those facts in the light most favorable to the plaintiff,
and construe the complaint liberally.  <u>Gregory v. Daly</u>, 243 F.3d
687, 691 (2d Cir. 2001).  The district court may dismiss a claim
only if the plaintiff's factual allegations are not sufficient
"to state a claim to relief that is plausible on its face."  <u>Bell
Atlantic Corp. v. Twombly</u>, ___ U.S. ___, 127 S. Ct. 1955, 1960
(2007);[1] <u>see also Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d Cir.

---

[1]In <u>Bell Atlantic</u>, the Supreme Court indicated that the
accepted rule of <u>Conley v. Gibson</u>, "that a complaint should not
be dismissed for failure to state a claim unless it appears
beyond doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to relief, had
outworn its usefulness and that it was time to adopt a new and
heightened pleading standard."  127 S. Ct. at 1968 (<u>quoting
Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  After <u>Bell
Atlantic</u>, the Second Circuit questioned whether the Court
intended the stricter standard for assessing the adequacy of
pleadings announced in <u>Bell Atlantic</u> should apply generally or

-2-

2007).  Although detailed factual allegations are not required, a plaintiff must provide the grounds of her entitlement to relief beyond mere "labels and conclusions."  A "formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic, 127 S. Ct. at 1964-65.  The complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and demonstrate a right to relief.  Id.  Conclusory allegations are not sufficient.  Under the plausibility standard, a claim must be amplified "with some factual allegations in those contexts where such amplification is needed to render the claim plausible."  Iqbal v. Hasty, 490 F.3d at 157-58.

DISCUSSION

The City and Cimmino move to dismiss Lyddy's and Marcoccia's Title VII claim.  The City maintains that they do not allege that it is their employer and thus it cannot be liable under Title VII.  Cimmino maintains that the Title VII claim against him must be dismissed because there is no individual liability under Title VII.  Cimmino moves as well to dismiss the second count, in which Lyddy and Marcoccia allege a claim against him for negligent and/or intentional infliction of emotional distress.  The City

only in antitrust cases, and concluded that "the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible plausibility standard."  Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).

also moves to dismiss the third count, which alleges an attempted due process violation, on the grounds that the complaint does not allege what rights were abridged or the manner in which they were abridged. The Board joins in moving to dismiss this count to the extent it is brought against it. The City, the Board, and Cimmino move to dismiss the fourth count on the grounds that it does not articulate a legally cognizable cause of action.

The City, the Board, and Cimmino also move to strike numerous paragraphs of the complaint on the grounds that the allegations are immaterial, scandalous, and impertinent.

Lyddy and Marcoccia move to disqualify counsel for the City on the ground that counsel's simultaneous representation of the City and the Board presents an impermissible and insoluble conflict of interest.

I.   Title VII Claim Against the City & Cimmino

The City maintains that the Title VII claim against it must be dismissed because Lyddy and Marcoccia do not, and cannot, allege that it was their employer. The City is correct.

Throughout the complaint, Lyddy and Marcoccia only allege that the Board was their employer. For example, in paragraph 4, the complaint alleges that "the Board is the employer of plaintiffs." In paragraph 9(a), it alleges that "the Board engaged in employment discrimination." Paragraph 10 alleges that "Lyddy has been employed by the Board since 1990 ... Marcoccia

has been employed by the Board since approximately 1988."
Paragraph 25 alleges that "[d]espite the complaints made by
plaintiffs to the Board, ... the Board failed and refused to
terminate" Cimmino's sexual harassment of them.  And in paragraph
26, it says that Cimmino's sexual harassment, abuse, and
discrimination was ratified and condoned by the Board and the
Board's failure to terminate or restrain him rendered his conduct
to be a policy of the Board.  In contrast, the City is mentioned
only in paragraph 5, which states that "the City ... is a
municipal corporation with authority to review the Board's acts
and actions."  The complaint simply does not allege any
involvement of or acts by City officials, as opposed to Board
officials, in the alleged conduct forming the basis of the Title
VII claim.

The existence of an employer-employee relationship is the
touchstone of liability under Title VII.  Gulino v. New York
State Educ. Dept., 460 F.3d 361, 370 (2d Cir. 2006).  It is well
settled that under Title VII an employee may only sue her
employer.  E.g., Nanton v. City of New York, No. 05civ8989(DLC),
2007 WL 2319131 (S.D.N.Y. Aug. 10, 2007).  To discern the
existence of an employment relationship, the court must start
with traditional indications of employment under the common law
of agency.  Gulino, 460 F.3d at 379.  This involves an
examination of whether the putative employer had any role in

hiring, promoting, demoting, or compensating the employee and the extent to which it had control over the day-to-day activities of the employee. Id. (citing Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730 (1989)). There must be a relationship where the level of control is direct, obvious and concrete, not merely indirect or abstract. Id.

Here, not only do Lyddy and Marcoccia allege that the Board, not the City, is their employer, there is also nothing in the alleged facts from which the court could determine, based on traditional agency principles, that the City is their employer.[2] Moreover, such a finding would be contrary to Connecticut statutes which make it clear that local boards of education, not municipalities, are charged with maintaining public schools and implementing the state's educational interests. In fact, Connecticut statutes give local school boards the express authority to employ and dismiss the schools' teachers and staff. Conn. Gen. Stat. § 10-220; Conn. Gen. Stat. § 10-241 ("Each school district shall be a body corporate and shall have the

_____

[2]Although Lyddy and Marcoccia assert in their opposition papers that under general agency principles the City can be deemed their employer because they are paid out of the City treasury, this factual assertion is not alleged in the complaint and thus cannot be considered by the court. Henthorn v. Dep't of Navy, 29 F.3d 682, 688 (D.C. Cir. 1994) (noting that factual allegations in briefs or memoranda of law may not be considered when deciding a Rule 12(b)(6) motion); cf. Behrens v. Pelletier, 516 U.S. 299, 309 (1996) (noting that the facts alleged in the complaint control for the purpose of a motion to dismiss).

power to sue and be sued; ... and to employ teachers, ... and pay their salaries."); Conn. Gen. Stat. § 10-151 (governing procedures by which local school boards promote, terminate, and compensate teachers).

In the absence of any allegation that the City is the employer of Lyddy or Marcoccia, or any facts from which the court could determine that the City had any control over the terms and conditions of their employment or day-to-day activities, and in light of the provisions of the Connecticut statutes which expressly delegate control over public schools to local school boards, including the employment of teachers and staff, it does not appear that Lyddy and Marcoccia can prove any facts to support their Title VII claim against the City.

The Title VII claim against Cimmino must also be dismissed because individuals, including supervisors, are not liable under Title VII. E.g., Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004); Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003); Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995); Martin v. Town of Westport 329 F. Supp. 2d 318, 325 (D. Conn. 2004). Rather, as noted, liability under Title VII is limited to employers.

Because the allegations in the complaint are not sufficient to state a claim for relief under Title VII that is plausible on its face as to the City and Cimmino, and because it appears

beyond doubt that they can prove no set of facts in support of their Title VII claim against either of these defendants, count one of the complaint against them is dismissed with prejudice.[3]

## II. Emotional Distress Claim Against Cimmino

The second count of the complaint alleges that Cimmino conducted himself "for the negligent and/or joint purposes of inflicting emotional distress upon plaintiffs and divesting them of their right to have their grievances redressed."[4]  Cimmino

---

[3]Lyddy and Marcoccia assert in their opposition papers that the first claim, even though it only alleges that the City deprived them of their rights "as provided by Title VII of the Civil Rights Act of 1964, § 710, et seq. as amended 42 U.S.C. § 2003, et seq[,]" somehow also states a "common law tort" claim against the City, but they do not identify the nature of this "common law tort," nor do they allege any acts or conduct by the City to support any tort claim.  Although the court must, on a motion to dismiss, liberally construe a complaint, Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001), this does not mean that it must construe a complaint to include a claim that is not pleaded.  Augienello v. Coast-to-Coast Fin. Corp., 64 Fed. Appx. 820 (2d Cir. 2003).  In the absence of any factual allegations supporting such a tort claim and the grounds on which it rests, this supposed claim, assuming it is alleged, is also dismissed. Amron v. Morgan Stanley Inv. Advisors, Inc., 464 F.3d 338, 343 (2d Cir. 2006) (dismissing a complaint for failing to give the defendant fair notice of what the claim is and the grounds on which it rests).  However, if Lyddy and Marcoccia wish to pursue such a tort claim they shall file an amended complaint within 30 days setting forth sufficient factual allegations to afford the defendants fair notice of the claim and the grounds on which it is based and is plausible on its face.  Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1960.

[4]This allegation as to Cimmino's purpose is irrelevant in determining whether there is a viable claim of emotional distress because the dispositive issue is whether "the employer's conduct, not the motive behind the conduct, is extreme or outrageous." Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000)); Huff v. West Haven Bd. of Educ., 10 F. Supp. 2d 117, 123

moves to dismiss this count on the grounds that the alleged conduct is not extreme and outrageous and that it did not occur in the context of the termination of employment.

 A. <u>Intentional Infliction of Emotional Distress</u>

 To establish a claim for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct was the cause of the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. <u>E.g.</u>, <u>Golnik v. Amato</u>, 299 F. Supp. 2d 8, 14-15 (D. Conn. 2003). In addition, to be actionable, the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' ... Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient." <u>Appleton v. Bd. of Educ.</u>, 254

---

(D. Conn. 1998) ("The employer's motive ... is not relevant to whether the act was outrageous; it is the act itself which must be outrageous.").

Conn. 205, 210-11 (2000). It is for the court to determine in the first instance whether the alleged conduct of a defendant, as a matter of law, satisfies these requirements. Id. at 210; Ancona v. Manafort Bros., Inc., 56 Conn. App. 701, 712 (2000).

In the employment context, courts carefully review intentional infliction of emotional distress claims. Grigorenko v. Pauls, 297 F. Supp. 2d 446, 448 (D. Conn. 2003) ("Intentional infliction of emotional distress claims are often pleaded but rarely get very far under the Appleton standard."); Golnik v. Amato, 299 F. Supp. 2d at 15 (citing cases).

Lyddy and Marcoccia do not identify the specific conduct that forms the basis of this claim, but the court construes the claim to be based only on Cimmino's alleged conduct that was directed at them,[5] consisting of (1) flaunting a device used to

_____

[5]The complaint additionally alleges that Cimmino (1) restrained a student with masking tape over his mouth and body, (2) put a kindergarten boy across his lap and massaged his buttocks, and (3) gave a staff member thong underpants. Because this conduct was directed at third persons and not at either Lyddy or Marcoccia, it falls within the ambit of bystander emotional distress, which allows recovery, within certain limitations, for emotional distress as a result of harm done to a third party. Clohessy v. Bachelor, 237 Conn. 31, 49 (1996). However, to maintain such a claim, the Clohessy court set forth four requirements: First, the plaintiff bystander must be closely related to the injury victim. Second, the bystander's emotional injury must be caused by the contemporaneous sensory perception of the event or conduct that causes the injury. Third, the injury to the victim must be substantial, resulting in either death or serious physical injury. Finally, the plaintiff bystander must have sustained a serious emotional injury -- that is, "a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to

heighten sexual arousal, (2) wearing a tie bearing a painting of a naked woman, (3) leaving a sexually oriented newspaper on Marcoccia's desk, (4) bragging about his visits to a nudist camp and showing pictures of himself at the camp, (5) boasting about his trips to "S&M" clubs and inviting Lyddy to accompany him to one, (6) frequently stating he could get rid of anyone he wanted, (7) filing a criminal complaint accusing Lyddy and Marcoccia of complicity in connection with financial irregularities in an after-school program even though the charges had been found to be without merit by the Board and Internal Affairs, and that this coincided with the death of Lyddy's husband.

The court does not, however, need to decide whether this alleged conduct is sufficiently extreme and outrageous because the claim is otherwise deficient for failing to allege the other essential elements of an intentional infliction of emotional distress claim, i.e., that Cimmino intended to inflict emotional distress, or knew or should have known that emotional distress

---

the circumstance." Id. at 52-54. Lyddy and Marcoccia do not make any of these allegations. Thus, the conduct that was directed at third parties and not directly at them cannot be considered in assessing Cimmino's conduct for the purpose of the claim for intentional infliction of emotional distress.

Moreover, in light of the fact that the emotional distress claim is only alleged as to Cimmino, the conduct of other Board members and the unidentified police detective, who allegedly called Lyddy at home on the day of her husband's funeral to tell her there was a warrant for her arrest and called Marcoccia and warned her that if she retained a lawyer a warrant for her arrest would be issued within 48 hours, is also not relevant.

was the likely result of his conduct and that his conduct was the cause of the alleged emotional distress. E.g., Golnik v. Amato, 299 F. Supp. 2d at 14-15. Accordingly, because the factual allegations are not sufficient to state such a claim that is plausible on its face, it is dismissed with leave to replead.

B.   Negligent Infliction of Emotional Distress

A cause of action for negligent infliction of emotional distress is limited to conduct arising out of the termination of employment. Perodeau v. City of Hartford, 259 Conn. 729, 762-63 (2002) ("[A]n individual municipal employee may not be found liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, as distinguished from conduct occurring in the termination of employment."). Cimmino's alleged conduct did not occur in the termination of employment. Indeed, both Lyddy and Marcoccia are still employed by the Board. Thus, this claim is dismissed with prejudice.

III. Due Process Violation

In the third count, Lyddy and Marcoccia allege that the City[6] "has attempted to abridge [their] due process rights by

---

[6]The third count is only brought against the City. It does not name the Board in apparent recognition of the fact that a plaintiff may assert a claim under § 1983 simultaneously with a Title VII claim only if the two claims are sufficiently distinguishable. See Carrero v. New York City Hous. Auth., 890 F.2d 569, 576 (2d Cir. 1989). Indeed, "although Title VII supplements and overlaps § 1983, it remains an exclusive remedy

allowing defendant Cimmino's extortion attempts to proceed, by conducting a criminal investigation of them and threatening prosecution."  The City maintains that these allegations are insufficient to allege a civil rights claim.  The court agrees.

This claim is deficient in a number of ways.  First, there is no direct cause of action under the Fourteenth Amendment. E.g., Baxter v. Vigo County Sch. Corp., 26 F.3d 728, 732 n.3 (7th Cir. 1994) (holding that there is no direct cause of action under the Fourteenth Amendment and that Congress provided a means to vindicate these rights in 42 U.S.C. § 1983); Turpin v. Mailet, 591 F.2d 426, 427 (2d Cir. 1979) (same).  However, in light of the court's obligation to construe complaints liberally, even those filed by attorneys, the court construes it as alleging a violation of § 1983.  See e.g., Leonard P'ship v. Town of Chenango, 779 F. Supp. 223 (N.D.N.Y. 1991).

Second, there can be no recovery under § 1983 for an attempted constitutional violation; only a claim of actual deprivation is cognizable under the statute.  Hale v. Townley, 45 F.3d 914, 920 (5th Cir. 1995); Mozzochi v. Borden, 959 F.2d 1174, 1180 (2d Cir. 1992); Dixon v. City of Lawton, 898 F.2d 1443, 1449 (10th Cir. 1990); Dooley v. Reiss, 736 F.2d 1392, 1394-95 (9th

---

when a state or local employer violates only Title VII."  Moche v. City Univ. of N.Y., 781 F. Supp. 160, 168 (E.D.N.Y. 1992) (quoting Johnston v. Harris County Flood Control Dist., 869 F.2d 1565, 1576 (5th Cir. 1989)).

Cir. 1984); <u>Landrigan v. City of Warwick</u>, 628 F.2d 736, 742 (1st Cir. 1980); <u>Ashford v. Skiles</u>, 837 F. Supp. 108, 115 (E.D. Pa. 1993); <u>Defeo v. Sill</u>, 810 F. Supp. 648, 658 (E.D. Pa. 1993). "[T]he mere attempt to deprive a person of his [constitutional] rights is not, under usual circumstances, actionable under section 1983." <u>Andree v. Ashland County</u>, 818 F.2d 1306, 1311 (7th Cir. 1987).

Third, even construing this count as asserting a § 1983 claim does not save it from dismissal because it contains only broad and conclusory statements and not any specific allegations of fact which indicate the deprivation of a constitutional right. <u>Alfaro Motors, Inc. v. Ward</u>, 814 F.2d 883, 887 (2d Cir. 1987); <u>Martinez v. Brevard County Parks & Recreation</u>, No. 6:06-cv-116-Orl-18DAB, 2006 WL 4694730 (M.D. Fla. Apr. 05, 2006). It also does not identify the protected liberty interest or property interest that was allegedly deprived and does not state whether the alleged due process violation is substantive or procedural. <u>See</u> <u>Hennessy v. City of Long Beach</u>, 258 F. Supp. 2d 200, 206 (E.D.N.Y. 2003); <u>Huff v. West Haven Bd. of Ed.</u>, 10 F. Supp. 2d 117, 121-22 & n.11 (D. Conn. 1998).

Fourth, even if a § 1983 violation had been properly pleaded, the claim would be deficient because there is no allegation of any policy or custom of the City that caused the asserted constitutional deprivation under the guidelines

established by the Supreme Court.  See Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-91 (1976) (holding that a municipality may be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue); see also e.g., Jenkins v. City of New York, 478 F.3d 76 (2d Cir. 2007); Wimmer v. Suffolk County Police Dept., 176 F.3d 125, 137 (2d Cir. 1999).

For all of these reasons, the third count is defective on its face and is dismissed with prejudice.

IV. Fourth Count

        The fourth count of the complaint states that "plaintiffs pray that defendants be prohibited from continuing their harassment of plaintiffs as described above and specifically that they be prohibited from their attempts to engage in any activity related to the criminal prosecution of plaintiffs until the resolution of this case."  The defendants assert that this claim is legally deficient.  The court agrees.

In so far as this count purports to set forth a claim for relief, it is deficient because a claim for relief must contain a recitation of operative facts that give rise to an enforceable right.  Original Ballet Russe, Ltd. v. Ballet Theatre, Inc., 133 F.2d 187 (2d Cir. 1943).  To properly allege a claim for relief, a plaintiff must provide a short and plain statement showing that the pleader is entitled to relief so that the defendant is given

fair notice of what the claim is and the grounds on which it rests.  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007).  The fourth count does not contain a statement of the claim showing that Lyddy and Marcoccia are entitled to relief or the grounds on which the claim rests.

Rather than stating a claim for relief, the fourth count appears to set forth a prayer for temporary injunctive relief. As such, as a procedural matter, it is not properly asserted as a separate count of the complaint.  See Fed. R. Civ. P. 10(b).  As a substantive matter, such relief can not be granted because under Rule 65(d), an injunction must be more specific than a simple command that the defendants obey the law.  Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41 (2d Cir. 1996) (holding it improper to issue an injunction barring a defendant from making threats of spurious lawsuits); Sterling Drug, Inc. v. Bayer AG, 14 F.3d 733, 748 (2d Cir. 1994) (noting that an injunction cannot be broadly worded to generally prohibit unlawful activity); Hughey v. JMS Dev. Corp., 78 F.3d 1523, 1531 (11th Cir. 1996) (noting that appellate courts will not countenance injunctions that merely require someone to obey the law); Epstein Family P'ship v. Kmart Corp., 13 F.3d 762, 771 (3d Cir. 1994) ("[I]njunctions, which carry possible contempt penalties for their violation must be tailored to remedy the specific harms shown rather than to enjoin all possible breaches of the law.").

Indeed, to the extent Lyddy and Marcoccia seek to enjoin or impose unwarranted burdens on the City's ability to prosecute criminal conduct, such relief would only be appropriate in exceptional circumstances, if at all.  See Wooley v. Maynard, 430 U.S. 705 (1977) (noting that as a general rule, a court will not enjoin the enforcement of a criminal statute, even if unconstitutional, because doing so would seriously impair the state's interest in enforcing its criminal laws and implicate the concerns for federalism, and that to justify such interference there must be exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights).  This is not such an exceptional case.

Accordingly, the fourth count, in so far as it is intended to be a claim for relief, is dismissed with prejudice.

V.   Motion to Strike

The City, the Board, and Cimmino all move to strike the following allegations of the complaint: (1) the language in paragraph 12 which characterizes Cimmino's conduct as "sexual antics ... reminiscent of the boom-boom room" and mentions an alleged instance where Cimmino restrained a boy with masking tape and another where he put a kindergarten boy across his legs and massaged his buttocks; (2) the language in paragraph 13 that the school superintendent treated Lyddy and Marcoccia not as victims, but as perpetrators and their allegations as an embarrassment;

(3) the language in paragraph 15 that Cimmino was "perhaps emboldened by his employer's failure to discipline him;" and (4) paragraphs 19, 22, and 27 in their entirety.

Although motions to strike are generally disfavored, they may be granted if the allegations have no bearing on the claims alleged, are likely to prejudice the movant, or have "criminal overtones." <u>G.I. Holdings, Inc. v. Baron & Budd</u>, 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002); <u>see also</u> Fed. R. Civ. P. 12(f) (stating that redundant, immaterial, impertinent, or scandalous matter may be stricken from any pleading).

With regard to the allegations in paragraph 12 which characterize Cimmino's conduct as "sexual antics" reminiscent of a "boom-boom room," the court agrees that they improperly cast a derogatory and salacious light on the allegations and are irrelevant and immaterial and thus they are stricken.  The court disagrees, however, that the allegations relating to Cimmino's conduct vis-a-vis students are irrelevant to the sexual harassment claim and thus these allegations are not stricken.

With regard to paragraphs 13 and 15, the defendants are correct that it is improper for Lyddy and Marcoccia to allege their interpretation of the facts or to surmise as to the reasons for any alleged conduct, i.e., that the superintendent treated them as perpetrators not as victims (paragraph 13), and that Cimmino was "perhaps emboldened by his employer's failure to

discipline him" (paragraph 15).  These assertions are stricken.

With regard to paragraphs 19 and 27, the allegations
relating to Lyddy's and Marcoccia's personal lives and health,
i.e., (1) that the filing of the criminal complaint against Lyddy
and Marcoccia coincided with the death of Lyddy's husband
(paragraph 19) and (2) that the emotional distress Lyddy and
Marcoccia suffered "has not been lessened by their personal
health issues" and the details of those health issues (paragraph
27) are immaterial and irrelevant and are stricken.  The
remaining allegations in these paragraphs appear to be relevant
and are not stricken.

Paragraph 22, which only contains statements about the
prominence of the "Lyddy clan" in the Bridgeport area and the
details of certain family members' accomplishments, is stricken
in its entirety as irrelevant and immaterial.

VII. <u>Motions to Disqualify Counsel For the City</u>

Lyddy and Marcoccia move pursuant to rules 1.7,[7] 1.8(b), and

---

[7]Rule 1.7 of the Rules of Professional Conduct sets forth
the general rule on conflicts of interest in an attorney-client
relationship.  <u>Burton v. Mottolese</u>, 267 Conn. 1 (2003).
Subsection (a) of the Rule provides: "A lawyer shall not
represent a client if the representation of that client will be
directly adverse to another client, unless: (1) The lawyer
reasonably believes the representation will not adversely affect
the relationship with the other client; and (2) Each client
consents after consultation."

1.9(2)[8] of the Connecticut Rules of Professional Conduct to
disqualify counsel from jointly and simultaneously representing
both the City and the Board.  They assert that counsel's joint
representation of both defendants creates an insoluble conflict
"stemming from the cross claims which independent counsel for
each would plead against the other ... center[ing] around
accusations that the other's action/inaction,
misconduct/inattention, hiring policies/mismanagement/lack of
supervision and so forth brought them in as defendants to this
action."

Even if the motions to disqualify had merit, and even if
Lyddy and Marcoccia had standing to assert such a conflict of
interest,[9] the motions are denied as moot in light of the fact

_____

[8]Rule 1.9 of the Rules of Professional Conduct governs
disqualification of counsel for a conflict of interest relating
to a former client.  The rule states that: "A lawyer who has
formerly represented a client in a matter shall not thereafter:
(1) Represent another person in the same or a substantially
related matter in which that person's interests are materially
adverse to the interests of the former client unless the former
client consents after consultation; or (2) Use information
relating to the representation to the disadvantage of the former
client except as Rule 1.6 would permit with respect to a client
or when the information has become generally known."

[9]Because of the substantial costs associated with
disqualification of a party's counsel, and because
disqualification is often misused by opposing parties as a
procedural weapon and a technique of harassment, standing to seek
disqualification is ordinarily limited to present or former
clients who would be adversely affected by the continuing
representation, whether or not they are parties to the present
litigation.  <u>Restatement (Third) of the Law Governing Lawyers</u> §
6.  Thus, as a general rule, courts do not allow parties who are

that the claims against the City are dismissed.

CONCLUSION

For the foregoing reasons, the motion of the City and the Board [doc. # 26] to dismiss is GRANTED. Cimmino's motion to dismiss [doc. # 28] is GRANTED. The motions to strike [docs. ## 26 and 30] are GRANTED in part and DENIED in part. Lyddy and Marcoccia shall file an amended complaint consistent with this ruling within 30 days. Lyddy's and Marcoccia's motions to disqualify counsel [docs. ## 52 and 53] are DENIED.

SO ORDERED this 11th day of September, 2007 at Bridgeport, Connecticut.

/s/_____
          Alan H. Nevas
     United States District Judge

---

not directly affected to invoke the interests of a client with whom they are not in privity. Id.; see also Premium Prods. Sales Corp. v. Chipwich, Inc., 539 F. Supp. 427, 435 (S.D.N.Y. 1982) ("[U]nless the integrity of the action currently before the court is threatened ... , the courts must refrain from imposing the burdens of an attorney disqualification on a client and leave the matter to state or federal disciplinary proceedings."); United States Football League v. Nat'l Football League, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985) (citing authorities for the proposition that disqualification motions are "often interposed for tactical reasons" and produce unnecessary delay).